IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

**v.**                                                                    **Criminal Action No. 3:04cr20**

**LAVAR WILLIAM HENDERSON,**

          **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Lavar William Henderson's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 59.) The United States responded in opposition, (the "Opposition"). (ECF No. 60.) Henderson has not replied and the time to do so has expired.

After an initial review of Henderson's request for compassionate release, the Court ordered the Parties to address whether *United States v. Venable*, 943 F.3d 187 (4th Cir. 2019) applies to Henderson's revocation sentence. (ECF No. 62.) Both Parties filed supplemental briefs acknowledging that *Venable* relates to Henderson's revocation sentence. (ECF Nos. 63–64.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion for Compassionate Release in part and reduce Henderson's supervised release revocation sentence from 46 months to 36 months.

## I. Background

On May 18, 2004, Henderson pled guilty to Possession with Intent to Distribute cocaine base in violation of 21 U.S.C. § 841 and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 21 U.S.C. § 924(c). (Plea Agreement, ECF No. 13; *see also* Compassionate Release Recommendation 1, ECF No. 61.) The Court sentenced Henderson to a term of 181 months' imprisonment to be followed by a five-year term of supervised release. (J., ECF No. 21.)

The Presentence Report (PSR) describes the conduct underlying Henderson's 2003 offense:

> On August 20, 2003 . . . Henderson distributed 39.562 grams of cocaine base, commonly known as "crack," to a person secretly working for law enforcement. On January 11, 2004, officers of the Richmond Police Department executed a state search warrant at . . . the residence of Henderson's girlfriend and children. During the search, officers recovered a set of digital scales, 17.650 grams of cocaine base . . . and a Glock .40 caliber semi-automatic pistol. . . . Following the search, officers located Henderson hiding in a car in the parking lot of the apartment complex. . . . On the way to the Richmond City Jail, Henderson informed the officers that he had just left a garage apartment at his mother's house . . . [o]fficers conducted a lawful search of the apartment and recovered 2.558 grams of cocaine base . . . 8.561 grams of cocaine hydrochloride, and a second set of digital scales.

(PSR 4–5, ECF No. 55.)

On August 18, 2011, after completing his initial prison term, Henderson began his five-year supervised release term. (Compassionate Release Recommendation 1.) "On July 19, 2013, . . . Henderson was arrested on state charges of possession with intent to distribute heroin and transporting a controlled substance." (Opp'n 2, ECF No. 60.) Henderson pled guilty to those charges in state court. (*Id.*) "Those charges also gave rise to a supervised release violation in this Court." (*Id.*) On March 11, 2015, after finding that Henderson violated the terms of his

2

supervised release, the Court revoked Henderson's supervision and sentenced him to an additional 46 months' imprisonment. (March 11, 2015 Order, ECF No. 52.)

Henderson has served approximately 50 percent of his 46-month revocation sentence. (Compassionate Release Recommendation 1.) Henderson, currently forty-two years old, is housed at FCI Petersburg Medium.[1] *Id.* The Bureau of Prisons ("BOP") states that Henderson will be released on May 7, 2022. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On May 6, 2020, Henderson filed a "request for Compassionate Release Consideration with the Warden at FCI Petersburg Medium." (Opp'n 3; *see also* ECF No. 60-1.) The record reflects that the Warden has not responded to Henderson's request. (Mot. 8, ECF No. 59.) On August 28, 2020, after more than 30 days with no reply from the Warden, Henderson filed the instant motion for compassionate release through counsel. (*Id.* 1.)

In the Motion, Henderson describes the current public health crisis caused by COVID-19. (*See, e.g., id.* 1, 5–7.) Henderson contends that "preventing [COVID-19] in correctional and detention facilities is challenging because of population-dense housing, varied access to hygiene facilities and supplies, and limited space for isolation and quarantine." (*Id.* 5–6; *see also* ECF No. 59-1.) Henderson claims that his "motion should be granted because the global COVID-19 pandemic combined with Henderson's mother[']s particular medical condition presents an 'extraordinary and compelling reason' for compassionate release." (*Id.* 2.) He further avers that "[t]he extraordinary and compelling reason for this motion is that . . . Henderson needs to be home to help his mother who is taking care of his children while he serves his sentence. His

---

[1] The Bureau of Prisons currently reports 221 inmates with positive COVID-19 tests at Petersburg Medium. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020).

3

mother currently suffers from a variety of serious medical conditions which makes this task quite difficult at times and more difficult [in] the future as she ages." (*Id.*) The United States opposes his request for compassionate release. (*See* ECF No. 60.)

In their supplemental briefs, the Parties agree that Henderson qualifies for compassionate relief even though he is serving a revocation sentence. The United States avers that in *Venable*, 943 F.3d 187, the Fourth Circuit ruled that "defendants serving sentences on supervised release violations [are] eligible for sentence reductions under the First Step Act (FSA), provided, that the underlying offenses of conviction were 'covered offenses' under the FSA." (U.S. Resp. 1, ECF No. 63.) In *Venable*, the Fourth Circuit relied on the "unitary sentence" framework, under which "the sentence imposed on a supervised release violation is but a continuation of the same sentence imposed on the 'covered offense' of conviction." (*Id.*) The United States does not dispute that "the 'unitary sentence framework' supports the conclusion that the term of imprisonment Henderson is currently serving is simply part of the sentence originally imposed on him" and "Henderson thus qualifies to apply for compassionate relief." (*Id.* 2.) However, the United States claims that *Venable* "would appear to have no applicability here one way or the other, as it did not address compassionate relief, and qualification for compassionate relief does not turn on whether the defendant is serving a sentence for a 'covered offense.'" (*Id.*)

Henderson asserts that "the *Venable* case stands for the proposition that [he] is eligible for relief even though he is serving time on a supervised release violation." (Resp. 1, ECF No. 64.) But "[a]s noted by the *Venable* Court, and the United States, it is still a discretionary decision by the court on whether to grant this relief." (*Id.*)

4

## II. Legal Standards

### A. Compassionate Release Under the First Step Act of 2018 Section 603

Generally, courts do not have the authority to modify a term of imprisonment once it has been imposed. *Freeman v. United States*, 564 U.S. 522, 526 (2011). When a court imposes a sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C. § 3582(b). It is well established that "'[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (quoting *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)).

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—
(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

5

their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### 1. **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11-cr-249, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

6

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### 2. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons."[3] U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15-cr-00073, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's

---

[3] The United States Court of Appeals for the Fourth Circuit recently explained in an unpublished decision that "[t]he Sentencing Commission's policy statements . . . control the disposition of [compassionate release motions], and not the BOP program statements, based on Congress' statutory directives." *United States v. Taylor*, No. 20-6575, 2020 WL 5412762, at *1 (4th Cir. Sept. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t)).

7

medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[4] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15-cr-0005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17-cr-0003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). Several courts have held that "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Id.* (citing *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (internal quotation marks and emphasis omitted)).

---

[4] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> > (1) (A) extraordinary and compelling reasons warrant the reduction; or
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

### 3. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4). The Guidelines policy statement concerning compassionate release further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13. These include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### B. Modification of a Sentence under the First Step Act Section 404

In addition to Section 603(b) of the First Step Act, which addressed compassionate release, the First Step Act amended drug penalties in a different provision of the statute. Through Section 404, the First Step Act expressly permits sentence modifications for certain drug offenses. *See United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019), *as amended* (Nov. 21, 2019) ("the distinct language of the First Step Act compels the interpretation that motions for relief under that statute are appropriately brought under § 3582(c)(1)(B)").

9

The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Pub. L. No. 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Fist Step Act at § 404(a), 132 Stat. at 5222. These specified sections modified the drug amounts required to trigger mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with respect to the 5-year mandatory minimum and from 50 grams to 280 grams with respect to the 10-year mandatory minimum. Fair Sentencing Act, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. The Fair Sentencing Act also eliminated the 5-year mandatory minimum for simple possession of crack. *Id.* at § 3, 124 Stat. 2372, 2372; *see also Dorsey v. United States*, 567 U.S. 260, 276–77 (2012) (explaining sentencing discrepancies for certain drug offenses that the Fair Sentencing Act sought to remedy). "Although Section 2 of the Fair Sentencing Act did not alter the terms of imprisonment specified in Subsections 841(b)(1)(A)(iii) and (B)(iii), it did alter the amounts of crack cocaine required to trigger those terms." *United States v. Woodson*, 962 F.3d 812, 815 (4th Cir. 2020). Therefore "the Fair Sentencing Act changed the quantities of crack cocaine to which Subsection 841(b)(1)(C) applies, [and] 'modified' the statutory penalties of that subsection for purposes of crack cocaine offenders within the meaning of the First Step Act." *Id.* at 817.

The First Step Act imposes three eligibility requirements. To qualify for consideration for relief pursuant to the First Step Act, a defendant must show that he or she (1) committed a covered offense before August 3, 2010; (2) did not have his or her sentence imposed or reduced under sections 2 or 3 of the Fair Sentencing Act of 2010; and, (3) did not file a previous motion under § 404 of the First Step Act that that Court decided on the merits. *See United States v. Hardnett*, No. 3:03-cr-212, 2019 WL 5445887, at *6 n.7 (E.D. Va. Oct. 24, 2019) (quoting First

Step Act statute and limitations contained therein). Once a district court determines that First Step Act § 404 affords a defendant the opportunity for review, the court may apply intervening case law that developed after the defendant's initial sentencing. *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020) (finding that First Step Act § 404 allows court to consider whether defendant still qualified as a career offender for purposes of the Guidelines).

As the Fourth Circuit has explained, a defendant serving a revocation sentence remains eligible for a Section 404 sentence reduction because "the term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of supervised release are all part of the original sentence." *Venable*, 943 F.3d at 194 (quoting *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998)).

### III. Analysis

After due consideration, the Court will grant Henderson's Motion for Compassionate Release in part and reduce his revocation sentence from 46 months to 36 months.[5]

---

[5] Counsel for Henderson did not file a motion to reduce his sentence pursuant to First Step Act Section 404. Nonetheless, the Court considers the notable changes in sentencing law since it imposed his initial sentence in 2004 and finds a partial reduction appropriate. Moreover, some courts have recognized that partial sentence reductions may be appropriate under First Step Act Section 603.
For instance, a court in the Southern District of New York recently granted a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for a 54-year-old inmate who, along with his co-defendant, ran a cocaine and heroin racketeering enterprise and who was found guilty by a jury of having participated in the torture and murder of a government confidential informant. *United States v. Rodriguez*, — F. Supp. 3d —, 2020 WL 5810161, at *1–2 (S.D.N.Y. Sept. 30, 2020). In *Rodriguez*, Judge Jed S. Rakoff found that the defendant had "undertaken extraordinary efforts at rehabilitation" that "weigh[ed] strongly in favor of a sentence reduction," and reduced the defendant's sentence from life to 30 years' imprisonment. *Id.* at *6. Although the court did not reduce the defendant's sentence to time served, Judge Rakoff observed that the United States Court of Appeals for the Second Circuit "recognized that the [compassionate release] statute provided . . . flexibility [in sentencing], *see United States v. Brooker*, — F.3d —, 2020 WL 5739712, at *8 (2d Cir. Sept. 25, 2020), thus allowing a [sentence reduction] in this case." *Id.* at *1.

11

### A.    The Record Does Not Support a Reduction to a Time Served Sentence

Regarding Henderson's request for compassionate release, the Court first waives the exhaustion of administrative remedies requirement. Henderson correctly notes that more than 30 days have passed without a response since he filed his request for relief with the Warden. (Mot. 8.) The United States, however, avers that Henderson has not exhausted his administrative remedies because he "failed to raise [the COVID-19] issue with BOP in his administrative request for compassionate release" and yet seeks to raise that issue here. (Opp'n 8.)

Courts may waive exhaustion if "'pursuit of agency review would subject the petitioner to undue prejudice.'" *Robinson*, 2020 WL 4041436, at *3 (quoting *Poulios*, 2020 WL 1922775, at *1). Even if Henderson did not properly raise the COVID-19 issue in his request to the Warden, the record does not establish that the Warden timely replied to Henderson or addressed the issues Henderson raised regarding his familial obligations. Because any further delay would result in prejudice to Henderson, the Court waives the exhaustion requirement.

Next, the Court finds that Henderson does not appear to be at high risk of suffering from COVID-19. Henderson has not submitted medical records, nor does he claim to have any serious medical conditions. (*See* Mot.) Rather, he makes only broad generalizations regarding the dangers of COVID-19 to inmates. (*See id.* 12–17.) As noted above, "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Feiling*, 2020 WL 1821457, at *7 (citing *Clark*, 2020 WL

---

The United States Court of Appeals for the Fourth Circuit has not addressed in published authority whether granting compassionate release offers only the opportunity to impose a sentence of time served or whether a court may grant a sentence reduction. Absent such authority, and considering the record before it, the Court finds a reduction from 46 months' imprisonment to 36 months' imprisonment appropriate here because Henderson is eligible for a sentence reduction pursuant to *Venable* and First Step Act Section 404.

12

1557397, at *4 (internal quotation marks and emphasis omitted)). As a result, Henderson's personal health and the current COVID-19 pandemic do not constitute an extraordinary and compelling reason for his immediate release.

The Court also finds that Henderson has not shown why his mother's poor health constitutes an extraordinary and compelling reason to grant him immediate release. While Henderson's mother appears to be in poor health, Henderson does not posit that he remains her sole caretaker or the only family member capable of providing support. The Court acknowledges that medical records for Henderson's mother indicate that she "suffers from multiple chronic conditions like liver transplant on meds, diabetes mellitus on meds and [hypertension]." (Mot. 12, internal citations and quotation marks omitted.) Henderson contends that "[h]is mother is in need of assistance with her appointments and when acutely sick, she needs help at home too." (*Id.*) However, Henderson does not say that his mother lacks support from friends or other family members. Moreover, Henderson's mother lives with Henderson's two adult children, who are twenty and twenty-one years old respectively. (*Id.*)

Henderson further argues that his children "are being raised and cared for and provided for by his mother." (*Id.*) But Henderson has not demonstrated why his adult children need additional care, or why they cannot care for themselves. The Court finds that Henderson has not established an extraordinary and compelling reason for granting him immediate release.

The Court notes, however, that it should not foreclose Henderson from a potential sentence reduction because the record shows he committed an offense covered under a different provision of the First Step Act, Section 404.

### B. Henderson Qualifies for a Reduced Sentence Under the First Step Act Section 404

Although Henderson does not establish grounds for immediate compassionate release, the Court will grant Henderson a partial sentence reduction. In 2004, Henderson was subject to a 60-month mandatory minimum sentence for a drug offense, his violation of 21 U.S.C. § 841. (PSR ¶ 57.) Henderson was sentenced to an aggregate of 181 months' imprisonment: 60 months for Count Four, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c), and 121 months for Count One, the drug offense, running consecutively. (*Id.*) Congress later modified the mandatory minimum sentence drug weight thresholds under the Fair Sentencing Act. But Henderson was sentenced before the Fair Sentencing Act went into effect and the Act was not made retroactive when passed. Fair Sentencing Act, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. The First Step Act of 2018 provides that the changes to the mandatory minimum sentences under the Fair Sentencing Act are now retroactive, which allows for Henderson's proposed relief.[6] First Step Act § 404(a), 132 Stat. at 5222.

---

[6] The table below summarizes the differences in the Sentencing Guidelines applicable to Henderson after the First Step Act:

|  | **Original Judgment** | **Fair Sentencing Act/First Step Act** |
|---|---|---|
| Total Offense Level: | 29 | 21 |
| Criminal History Category | IV | IV |
| Guideline Range | 121 to 151 months (Count 1), 60 months (Count 4) | 57 to 71 months (Count 1), 60 months (Count 4) |
| Mandatory minimum | 60 months (Count 1) | 0 months (Count 1) |
| Sentence Imposed | 181 months' imprisonment, 5 years supervised release, 46 month revocation sentence | 36 month revocation sentence |

In 2004, the mandatory Sentencing Guidelines stated that a drug offense involving "[a]t least 50 grams but less than 150 grams of cocaine base" resulted in a base offense level of 32. U.S. Sent'g Guidelines Manual § 2D1.1(c)(4) (U.S. Sent'g Comm'n 2004.) In 2018, the Sentencing Guidelines, now advisory, state that a drug offense involving "[a]t lease 112 grams but less than

For Section 404 relief, the Court first concludes that Henderson committed a covered offense before August 3, 2010. Henderson's sentence was based on possession of five grams of cocaine, (PSR 1), but the Fair Sentencing Act amended the statute under which he was convicted so that his sentence would no longer be proper unless he possessed at least twenty-eight grams. Because Henderson's sentence was based on an offense amended by the Fair Sentencing Act, it constitutes a covered offense.

Although the record states that Henderson possessed more than 28 grams of cocaine base when he was arrested in 2004, (PSR ¶ 4), the drug weight specified in the indictment controls his eligibility. "[T]he phrase 'violation of a Federal criminal statute,' in the definition of a 'covered offense' under Section 404(a) of the First Step Act, refers to the amount charged in the indictment on which a defendant was convicted, not the amount otherwise attributed to him or her by judicial finding." *United States v. Hardnett*, 417 F. Supp. 3d 725, 739 (E.D. Va. 2019). This is consistent with longstanding principles of federal law, that "[t]he indictment must allege whatever is in law essential to the punishment sought to be inflicted." *Apprendi v. New Jersey*, 530 U.S. at 510 (Thomas, J., concurring) (quoting 1 J. Bishop Criminal Procedure § 87 at 55). Therefore, the Court must find that Henderson was charged with possession of five grams of cocaine base. *See, e.g.*, *United States v. Woodson*, 962 F.3d 812 (4th Cir. 2020) (holding that the First Step Act of 2018 applied to convictions under § 841(b)(1)(c)). It follows that Henderson's offense constitutes a "covered offense" under Section 404(a) of the First Step Act, making him eligible for a sentence reduction.

---

196 grams of cocaine base" results in a base offense level of 26, and one involving "[a]t least 28 grams but less than 112 grams of cocaine base" results in a base offense level of 24. U.S. Sent'g Guidelines Manual § 2D1.1(c)(4) (U.S. Sent'g Comm'n 2018).

15

Second, the record makes clear that Henderson did not have his sentence imposed or reduced under Sections 2 or 3 of the Fair Sentencing Act. Third, he did not file a previous motion under § 404 of the First Step Act that a court decided on the merits. Therefore, this Court may reduce his sentence under the First Step Act.

The Court further finds that it may reduce Henderson's sentence because Henderson's current revocation sentence is part of his underlying drug sentence. Henderson served roughly seven years in custody before he was released to supervision in 2011. (Compassionate Release Recommendation 1.) While on supervised release, he was arrested on new state charges, and subsequently sentenced to 46 months' imprisonment on revocation. (*Id.*) The Fourth Circuit has held that parties serving revocation sentences remain eligible for First Step Act relief. *See Venable*, 943 F.3d at 193–94. Under *Venable*, this Court must conclude that Henderson's "revocation sentence is a component of his underlying original sentence for the drug conviction." *Id.* 194. Therefore, given that Henderson's "revocation sentence is part of the penalty for his initial offense, he is still serving his sentence for a 'covered offense' for purposes of the First Step Act." *Id.*

After finding Henderson eligible for a sentence reduction, the Court must determine whether a sentence reduction is appropriate. The Fourth Circuit left sentence reductions under Section 404(a) to the discretion of the District Court. *Venable*, 943 F.3d at 194. "Notably, the First Step Act provides limited guidance as to the procedures the court should employ when considering a motion for a reduction. . . . Section 404(c) reiterates that district courts retain full discretion in granting or denying relief on the merits." *Id.* n.11.

Given the circumstances in this case, the Court finds a 10-month sentence reduction appropriate here. Turning to the § 3553(a) factors, Henderson has served roughly 50% of his 46

16

month revocation sentence. A 10-month sentence reduction will afford adequate deterrence to his criminal conduct, as he will remain incarcerated for several more months. The Court also notes that not only did he violate supervised release, BOP records show that Henderson has committed five disciplinary infractions over the past year, including use of drugs/alcohol and fighting while incarcerated. (ECF No. 60-2). These infractions, combined with his previous criminal history, indicate that the Court should deny Henderson a time served sentence on the basis of public safety and promoting respect for the law. But a 10-month sentence reduction provides Henderson some of his proposed relief not earlier afforded under the Fair Sentencing Act.

In terms of rehabilitation, Henderson contends that "[w]hile being incarcerated [he] has little opportunity to take advantage of programming due to the COVID-19 pandemic; however, he continues to have the support of his wife and family." (Mot. 17.) In *United States v. Martin*, the Fourth Circuit explained that if an individual is eligible for a sentence reduction, the District Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." 916 F.3d 389, 397–98 (4th Cir. 2019). The Court encourages Henderson to take advantage of any BOP programming to the extent that it remains available during the COVID-19 pandemic.

In sum, Henderson's disciplinary infractions, criminal history, limited rehabilitation efforts, and underlying offense do not warrant immediate release. But considering the amendments made by the Fair Sentencing Act the Court finds a 10-month sentence reduction appropriate.

## IV. Conclusion

For the reasons explained above, the Court will reduce Henderson's revocation sentence from 46 months to 36 months.

/s/ MHL
M. Hannah Lauck
United States District Judge

Date: Nov. 18, 2020
Richmond, Virginia